The opinion of the Court was delivered by.
Poci-ié, J.
Plaintiff sues her husband for separation from bed and board, and urges the following grounds :
' 1. That being charged with the commission of an infamous offense, Of which lie was actually guilty, he liad fled from justice.
2. That during the last years of their married life, her husband had been guilty of excesses, cruel treatment and outrages towards her, of such a nature as to render their living together insupportable.
The case was tried by a jury, who returned a verdict in favor of plaintiff, and defendant appeals.
In a hill of exceptions, defendant complains that an exception which he filed to a second supplemental petition presented by plaintiff, and which was overruled, had not been legally tried, for the reason that he had not been duly notified, according to law and to the rules of the court, of the day fixed for the trial of 1ns said exception.
The record shows that defendant was not represented by counsel, or otherwise, at the trial of his exception, and does not contain satisfactory evidence of a legal and timely sendee of notice of the fixing of the trial of the exception; hut it nowhere appears that defendant urged a seasonable objection to the course therein pursued by the Judge, crashed the court to rescind its ruling, and reinstate his exception for trial. On the contrary, it appears that, without protest or objection, defendant moved to set aside the default which had been taken against .him, and filed an answer to the merits, under which state of facts he must he considered as having waived all objections to the alleged irregularity in the mode of trial of his exception.
The hill of exceptions which he took to the Judge’s course in trying Ms exception, which was signed or obtained only on the 31st of July, 1880, when the trial of the exception had taken place on the 24th of February previous, is not a seasonable objection, and cannot avail him; for his course, in filing au answer, without a preliminary attempt to reinstate his exception, concludes him as having waived the illegality of the proceeding complained of, and debars him at this time from obtaining any relief therefrom.
*303 We see no error in the decree of tlie District Judge in overruling his exception. The ground of complaint urged by plaintiff in her supplemental petition, did not conflict with the ground urged in her original petition. It was merely cumulation. Giraud vs. Mazier, 13 A. 147.
On the merits, this case has been very bitterly contested, and brings up a record full of venom and crimination, following an answer, in which defendant urges many and very serious and grave charges of illcondnct against his wife, a repetition of which is herein omitted through a proper sense of respect and delicacy towards the high social position of both parties, and is unnecessary, by further reason of the total absence of any, or the slightest proof in support of the same, and rendered still more unnecessary', by the fact that, after hurling all these crushing accusations at plaintiff, the defendant urges no plea in reconvention, and simply' prays for the dismissal of her action, under which the marriage ties would not be disturbed and the spouses re-united. This, of itself, is a Ml justification of the wife from such charges, for the introduction, of which, in this case, defendant’s counsel have expressed becoming regret, in their brief as well a.s in oral argument.
1. The evidence in the record fails to establish the first ground pleaded by the wife. It is true, that defendant frequently obtained from friends and acquaintances, the loan of small sums of money, on checks drawn by him on a hank, in which he liad, to his knowledge, no funds or credit to meet the payment of his cheeks, and that for several months previous to his departure for the far West, he had no employment, and no other resource or pecuniary aid but that which he thus obtained, and that feoling that such a state of things could not safely' last much longer, and that, dreading the storm which would sooner or later burst over him, he concluded to remove from a city where he could anticipate nothing but trouble, suffering and annoyance. Yet, we fail to see any evidence in the record sufficient to convict him of the criminal and deliberate intent to commit the offense which was charged against him, and to flee from justice under such charge.
When he left, no charge had been made or was pending against him ; and as soon as he was apprised of the charge which had been instituted during his absence, he forthwith returned to this place, and presented himself for trial under the prosecution, whence he was discharged, after satisfying the claim which the complainant had against him.
Concluding, as we do, that the evidence does not support that portion of the wife’s complaint, we are not called upon to pass upon the bill of exceptions taken by defendant to the Judge’s charge to the jury' on that point, and to the admissibility of certain testimony which was introduced on the same point over defendant’s objections.
*304 2. On the second ground relied upon by plaintiff, we find, in the record, evidence to establish the following facts :
Plaintiff and defendant, who were both. persons of refinement and culture, and both belonging to highly respectable and honorable families, moving in the best circles of society, were married in the year-1871, and established their domicil at the residence of the bride’s fattier, where it has remained ever since, with the interruption of a residence of two months in Chicago, during the year 1876.
At the time of his marriage, defendant was a member of a respectable commercial Ann in this city, which he soon after dissolved, forming a partnership with his father-in-law, as partnerin commendam. After a series of disasters he finally failed, and wound up his commercial business in the year 1875. From that time to this day, he ceased to provide for his wife and two children which had been born unto them, and from that time his conduct towards his wife underwent a great change. In 1876, he removed to Chicago, where he engaged in business, and to which place he caused his wife to join him with his children. But in a short time after this meeting, lie begged his father-in-law to send for his daughter and grandchildren, as the defendant had failed again, and had brought his family to utter destitution and distress, without even the means to pay their living expenses in a strange city. Receiving some pecuniary assistance from the father-in-law, the defendant then left for California, and his wife and the children returned toiler father’s home and support.
In 1878, the defendant returned to New Orleans, destitute of means and without employment, and again fixed his abode with his wife at her parents’ home in this city.
In addition to his reduced condition, and want of steady employment, he then became the victim of an insatiable passion for gambling, to satisfy which, he neglected all his duties to his wife and children, and resorted to schemes and devices, some of which are hereinabove related, in order to raise the money necessary to satisfy his infatuation for that vice. It is shown by the evidence that under the pressure of that dire passion and of other evil influences, lie became irritable towards bis wife and children, whom he utterly neglected, and whom he never heeded hut to abuse and tyrannize. He was never with thorn in the daytime, entered late at nig-ht every night for months, compelled lids wife, in the cold nights and even in sickness, to get up so as to let him in, and if she dared to remonstrate against his conduct, he abused and cursed her, threatened her with bodily harm, became enraged and furious, and made night hideous with his quarrels and brawls, and all this in ahouse which was not Ms, in a home not furnished by him, and under a roof where he was tolerated only for the sake of her whose *305 feelings lie crushed, whose love he spurned, and whose devotion he contemned. Her appeals for peace were night after night met with imprecations and threats of violence and degradation; her remonstrances in the name of their common offspring, or of her parents, whose generosity and hospitality he thus abused, drew from him the vilest and most opprobrious epithets.
Considering that she was a lady of refinement and culture, reared and brought, up with delicacy and elegance, it is not a violent presumption to conclude that such conduct, such excesses, and such outrages, on the part of her husband, rendered her life with him unbearable, and a burden which she could not have endured much longer, had he not relieved her by another departure, which occurred in March, 1879, since which time the two spouses have never met.
In determining the nature of excesses or cruel treatment of one of the spouses towards the other, and the degree at which such conduct renders their living together insupjiortable, a proper regard must be had to their respective characters, to their education and habits.
Language and conduct, quarrels and wrangling, which, to certain women, would create no special uneasiness or create no great distress, would be crushing to ladies of education, refinement and culture, whose, feelings would thereby be hurt, even unto incurable misery and despondency.
Applying, under the light of our jurisprudence to the plaintiff in this case, the facts disclosed by the record, which we have carefully analyzed, we cannot escape the conclusion that defendant’s conduct, characterized for more than twelve months by neglect of his wife, indifference to her affection and devotion, followed by cruel and harsh treatment, the result of constant excesses of dissipation, culminating in ever recurring scenes of violent quarrels, crowned by foul and opprobrious epithets daily heaped upon her, was more than she could bear, and that to turn a deaf ear to her appeals to the courts for redress, would be to condemn her to an untimely grave, as a victim of despair, and a heart-broken wife whose love would be unrequited^ and whose devotion to her husband would be her fatal torture.
We know, and duly consider that the laws of Louisiana do not favor the separation of two persons who have been made one under the laws of Hod and of the State; and that our jurisprudence does not sanction the rupture of the sacred ties of marriage for trivial causes, or for mutual wrongs of the two spouses; but the intolerable sufferings of a faithful wife, caused by the excesses of an erring husband, speak in a voice which must open to her relief the doors of the courts of justice, and must summon to her aid the protecting shield of the law. We therefore conclude that the jury, by their verdict, in separating these spouses *306 and placing these minor children under the care of their mother, whose virtues will safely guide them, and whose patient sufferings will teach them lessons of wisdom, have done justice to the parties.
Defendant’s counsel earnestly argued that the excesses of the husband, if any are proven, have been fully pardoned and forgiven by his wife, who continued to live in conjugal union with her husband until his final departure in 1879.
But we hold that the forbearance of a wife, and her patience in bearing with the cruel treatment of her husband, in the fond hope of his reform, and of his being restored to her as a kind husband, and to her children as an affectionate father, until at last she sees that all hope is lost, must not be confounded with, or construed as condonation or reconciliation, as contemplated in our laws and expounded in our jurisprudence.
In our consideration of the second ground of the wife’s complaint, we have confined our investigation to the evidence of facts and incidents only which have occurred since the spring of 1878, at which time the defendant returned to this city from California.
Defendant also complains of that part of the Judge’s charge to the jury in which he used the following language:
“ The jury, in passing upon these questions, may consider whether the charges in the defendant’s answer constitute a part of such outrages and ill-treatment,” as render the living of the spouses together intolerable. We agree with defendant’s counsel, and hold that such a charge was erroneous, and should not. have been given to the jury.
The issue, as made by the pleadings, contemplates only acts which have preceded the institution of the suit, and a fortiori cannot embrace, as grounds for separation, either the allegations of plaintiff or the averments urged by the defendant. Tourné vs. Tourné, 9 L. 457; Homes vs. Carrier, 16 A. 94; Daunoy vs. Hernandez, 33 A., not yet reported.
But, as the whole case is before us, and all the facts disclosed by the record are subject to our review and analysis, we are notfortliat reason compelled to remand the case for a new trial, and we are authorized to reach our own conclusion, eliminating all irrelevant evidence, and resting our conclusions upon legal testimony, which is ample in the record to sustain the verdict Of the jury. Vredenburgh et al. vs. Behan et al., 33 A. 627.'
Under this view of the case, a review of the Judge’s ex parte order, in granting to the mother the custody of the children during the pendency of the suit, is unnecessary and barren of any practical result, and' we are spared the trouble of passing upon the bill of exceptions taken thereto by the defendant.
*307 It is therefore ordered, adjudged and decreed, that the judgment of the lower court be affirmed at appellant’s costs.